UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19 CR 140 SNLJ (ACL) |
| | ) |
| DARRELL DOSS, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).  Pending before the undersigned is Defendant Darrell Doss' Motion to Suppress (Doc. 15) evidence obtained following a stop of his vehicle on November 15, 2018.

Doss argues that rifles, two of which had silencers attached to them, and thermal imaging devices (TIDs) were unlawfully seized from his vehicle by a Conservation Agent. Doss concedes that the stop of his vehicle was lawful.  He argues that the Agent did not recognize the incriminating nature of the rifles and TIDs when he seized them.  As such, Doss claims the Agent's seizure of the items cannot be justified under the plain view doctrine.

The Government argues that the incriminating nature of the items was immediately apparent to the Agent, because the simultaneous possession of guns and TIDs was a violation of Missouri law.  The Government further argued that the seizure was lawful under the automobile exception to the warrant requirement.

After an evidentiary hearing, both parties submitted memoranda.  (Docs. 27, 30.)

In consideration of the pleadings identified above, as well as all exhibits admitted into evidence, the undersigned recommends that the following findings of fact and conclusions of law be adopted; and that the Defendant's Motion be denied.

### I. Findings of Fact

The instant Indictment charges Doss with Possession of an Unregistered Firearm Silencer and Receiving Stolen Property, specifically, two thermal imaging devices (TIDs) belonging to the United States. (Doc. 2.) The rifle equipped with the silencer and TIDs were found in Doss' vehicle following a traffic stop just outside the Peck Ranch Conservation area on November 15, 2018.

The Peck Ranch Conservation area includes a wildlife refuge that is closed to the public between the hours of 10 p.m. and 4:00 a.m. While legal hunting is allowed in some areas during shooting hours, gates to the entrance of restricted areas are generally locked. Deer rifle season was open from November 16-26, 2019. *See* Missouri Department of Conservation, "2019 Fall Deer & Turkey Hunting Regulations and Information," https://huntfish.mdc.mo.gov/sites/default/files/downloads/2019FDT.pdf (last visited Jan. 31, 2010).

On November 8, 2018, Agent Baldridge and other officers began investigating an unlawful deer taking in nearby Big Spring campground. Security cameras in the area captured what appeared to be a Ford Raptor pickup with an extended cab near the location where the decapitated deer carcass with some meat removed was found.

A few days later, on November 12, 2018, a hunter reported seeing a blue extended cab Ford Raptor truck behind a locked gate of the Peck Ranch Conservation area that was closed to the public. The next day, surveillance cameras were installed near the East Gate

and Long Ridge Gate within the Peck Ranch Conservation Area. The cameras were motion activated so that a picture would be taken if something passed in front of the camera. Once the camera is activated, a photograph is taken of whatever moved in front of it; and the image is automatically sent to a Conservation agent's cellular phone.

Agent Baldridge had known Doss for more than a half dozen years and was aware that Doss drove a blue Ford Raptor pickup with an extended cab that had three amber lights across the front edge of the engine hood.

Shortly after midnight on November 15, 2018, Conservation Agent David Baldridge reviewed surveillance image alerts that he received on his cellular phone from one of the motion cameras that had just been installed within the Peck Ranch Conservation Area. The images depicted a Ford truck with three amber lights across the hood. In response to the alerts, Agent Baldridge made his way to the East Gate of the Peck Ranch Conservation Area to investigate.

Before Agent Baldridge made it to the entrance of Peck Ranch, he encountered a truck that looked like the truck in the surveillance camera images. It was travelling east on Highway 150 which is the road exiting the Peck Ranch from the East Gate. The truck stopped on the side of the roadway and Agent Baldridge parked his vehicle in front of the truck. Agent Baldridge activated the lights on his vehicle and used his loud speaker to direct the occupants of the truck to place their hands on the ceiling of the vehicle. The occupants followed that instruction. With the aid of his vehicle headlights, a spotlight, and a handheld flashlight, Agent Baldridge could see Doss was the driver of the truck. There was one front seat passenger and a passenger in the rear seat.

Agent Baldridge approached the driver's side of the truck and quickly noticed two rifles in the front passenger floorboard. He also observed two thermal imaging devices (TIDs); one was on the dashboard and the other was on the rear of the center console between the driver and front passenger seats. Upon seeing the TIDs, Agent Baldridge asked the occupants if the items were "thermals" and the men responded affirmatively. Agent Baldridge asked Doss to hand him the TIDs and then placed them in his truck. He then returned to Doss' truck to secure the firearms. Doss was directed to exit and place his hands on the truck's hood. The front seat passenger reached to hand one of the firearms to Agent Baldridge and Agent Baldridge reminded him to keep his hands on the ceiling. Two rifles and a pistol were removed from the front passenger area and two rifles were removed from the rear passenger seat. Silencers were attached to two of the four rifles.

Based on Agent Baldridge's training, he was aware that the simultaneous possession of guns and TIDs was a violation of law. (Tr. 54, 69, 72-73.) When he observed the firearms and TIDs, Agent Baldridge intended to seize the items as evidence and for officer safety. Missouri Regulation 3 CSR 10-7.410(1)(c) provides, in part:

> Wildlife may be hunted and taken only in accordance with the following: Subsection C: Night Vision and Thermal Imagery Equipment. No person may possess or control night vision or thermal imagery equipment while acting singly or as one of a group of persons while in possession of any firearm, bow, or other implement whereby wildlife could be killed or taken.

*See* Missouri Regulation 3 CSR 10-7.410(1)(c).

At the time of the traffic stop, Agent Baldridge and other investigating officers were focused on the recent unlawful deer kill that had been discovered and for which Doss was a

suspect.  After the stop, Doss admitted he killed the deer and it was an 11-point buck.  The deer head was recovered from a freezer at Doss' residence.

On a later date, an agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives examined the silencers that were seized.  Agent Baldridge prepared a probable cause affidavit that alleged the front passenger unlawfully possessed a firearm along with a TID.  It was later determined that one of the silencers was apparently homemade and that it was not registered; Agent Baldridge anticipated that was a "big deal."

The officer who prepared the report concerning the traffic stop made by Agent Baldridge did not testify.  That report does not mention the seizure of the firearms and TIDs.

Doss now requests suppression of the physical evidence that was seized from his truck following the traffic stop.

## II.  Conclusions of Law

Doss alleges that Agent Baldridge did not know his possession of the firearms and thermal imaging devices (TIDs) was a violation of the law until this Federal case was filed. He does not challenge the validity of the traffic stop.

The Government responded that Agent Baldridge knew the simultaneous possession of the rifles and TIDs was unlawful when he first observed the TIDs in Doss' truck. Consequently, Agent Baldridge's seizure of the items was justified under the plain view doctrine, as well as the automobile exception to the warrant requirement.

The undersigned concludes that the seizure of the items in question was lawful for the reasons set out below.

**II.A. Plain View**

Doss argues that the fact there is not a written report memorializing the reason the firearms and TIDs were seized "casts serious doubt as to whether or not Officer Baldridge" knew that the items were incriminating when he seized them. (Doc. 27 at p. 2.)

"The plain view doctrine permits the warrantless seizure of evidence if the officers 'are lawfully in a position from which they view the object, the incriminating character of the object is immediately apparent, and the officers have a lawful right of access to the object.'" *United States v. Evans*, 830 F.3d 761, 766 (8th Cir. 2016) (citations omitted). "'Immediately apparent' means that the officers have probable cause to associate the object with criminal activity." *United States v. Hatten*, 68 F.3d 257, 261 (8th Cir. 1995). "Probable cause does not require absolute certainty; it only requires 'that the facts available to a reasonably cautious man would warrant a belief that certain items may be contraband or stolen property or useful as evidence of the crime.'" *United States v. Muhammad*, 604 F.3d 1022, 1028 (8th Cir. 2010) (quoting *United States v. Green*, 560 F.3d 853, 858 (8th Cir. 2009)). *See also United States v. Hastings*, 685 F.3d 724, 729 (8th Cir. 2012) (incriminating nature of handgun and rifle following bank robbery was immediately apparent even though defendant's attire during robbery would not have permitted him to conceal the rifle).

Doss' only challenge to the plain view seizure of the firearms and TIDs is that the incriminating nature of the items was not immediately apparent to Agent Baldridge. He argues that since Agent Baldridge didn't write a report memorializing his belief that Doss' possession of the items was in violation of Missouri Regulation 3 CSR 10-7.410(1)(c), the incriminating nature of the items was not immediately apparent to him. This argument is not supported by the record.

First, Agent Baldridge testified that the moment he saw the TIDs along with the rifles, he immediately believed there was a law violation. (Tr. 54, 69, 72-73.) Based on that belief, Agent Baldridge instantly seized the TIDs and rifles from Doss' truck. Agent Baldridge knew that a blue Ford Raptor truck like Doss' had recently been observed near the location where the carcass of a deer that had been unlawfully taken was found. A similar truck was also observed in a restricted area of the Peck Ranch just days earlier. At the time of the seizure, Doss' truck was unlawfully within Peck Ranch. Not only were Doss and the passengers in a closed area, they were armed with rifles and TIDs which make it easier to see wildlife at night. The facts available to Agent Baldridge warranted his belief that TIDs in conjunction with the rifles represented contraband, or that they would be useful as evidence of a crime, specifically, a violation of 3 CSR 10-7.410(1)(c). *See Muhammad*, 604 F.3d at 1028. As the perceived violation involved the possession of TIDs with firearms, all four firearms and the TIDs constituted evidence of the crime thereby justifying the seizure of all the items.

The fact Agent Baldridge did not write a report about his reason for the seizure does not mean the incriminating nature of the simultaneous possession of firearms and TIDs was not immediately apparent to him. Agent Baldridge responded to the scene because the motion activated surveillance camera showed a truck that was associated with an unlawful deer taking in a closed area of the Peck Ranch after hours. Doss' presence in a closed area of the park, one day before deer rifle season opened, in a truck carrying other men, rifles, and TIDs would lead a reasonable person to believe that the men were violating 3 CSR 10-7.410(1)(c). Specifically, they were in possession of "thermal imagery equipment. . .as. . .a

group of persons while in possession of any firearm,. . .whereby wildlife could be killed…," which is a clear violation of 3 CSR 10-7.410(1)(c).

As it turned out, Doss admitted he was the person who killed the decapitated deer found one week earlier and put the deer head in his freezer. The fact the investigation was focused on the deer taking and not the significance of the possession of the rifles with TIDs is reasonable in view of the circumstances. While the filing of charges was arguably delayed, it is not unusual considering the various agencies that ultimately became involved in the investigation and the nature of the violations. Most importantly, the delay does not cast doubt on Agent Baldridge's perceptions at the time of the seizure.

This Court finds the incriminating nature of the TIDs and firearms was immediately apparent to Agent Baldridge.

## II.B.   Automobile Exception

"The Fourth Amendment forbids unreasonable searches and seizures. It is well settled that a warrantless search of an automobile is not unreasonable if law enforcement officers have probable cause to believe that the vehicle contains evidence of criminal activity." *United States v. Daniel*, 809 F.ed 447, 448-49 (8th Cir. 2016) (citing *United States v. Ross*, 456 U.S. 798, 823-24 (1982)). "Probable cause exists when the facts available to an officer would warrant a person of reasonable caution to believe that contraband or other evidence of a crime is present." *Id*. at 449 (citing *Florida v. Harris*, 568 U.S. 237, 243 (2013). This conclusion is buttressed by past cases addressing the seizure of contraband from vehicles after officers observed the contraband in "plain view." *United States v. Rowland*, 341 F.3d 774, 785 (8th Cir. 2003) ("The discovery of razor blades, rolling papers, and a syringe during the *Terry* search was sufficient to create probable cause to search the

Page **8** of **10**

entire vehicle."). *See also*; *United States v. Flatden*, 230 F.3d 1083, 1086 (8th Cir. 2000) (observation of "an item commonly used in the manufacture of methamphetamine … in plain view in the back seat" of an automobile gave probable cause to search other parts of the automobile for further contraband or evidence); and *United States v. Booker*, 269 F.3d 930, 932 (8th Cir. 2001) (citations omitted) (Officer's observation of marijuana residue on the passenger side floorboard of vehicle "generated probable cause to justify the subsequent search of the [vehicle].").

Doss admits that Agent Baldridge lawfully stopped his truck as his presence within the Peck Ranch constituted a trespass. When Agent Baldridge approached the vehicle to advise Doss of the reason for the stop, his observation of the TIDs and rifles in plain view gave him probable cause to believe evidence of a crime was present. It further provided him with the justification to search the entire vehicle.

The Court finds that the seizure of the TIDs and rifles along with any attached silencers was according to law and not in violation of Doss' constitutional rights. As a result, it is recommended that the Motion to Suppress evidence be denied.

### III.  Conclusion

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the Defendant's Motion to Suppress Evidence (Doc. 15) be **denied**.

Further, the parties are advised that they have fourteen days, not later than February 14, 2020, in which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained. Failure to file timely objections may result in a

waiver of the right to appeal questions of fact. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of January, 2020.